Case number 221518, United States v. Elijah Majak Buoi. At this time, will Counsel to the Appellant introduce himself on the record to begin. Good morning, Your Honors, and may it please the Court. My name is Scott Garoshin of Robinson & Cole, here with Attorney Seth Orkan on behalf of Defendant Appellant Elijah Buoi.  Excuse me, I didn't hear. How many minutes did you ask for? Three, Your Honor. You have two minutes. Two minutes. Thank you, Your Honor. We raised three issues in the brief. I'd like to focus on Issue 3, the jury poll. Three points there. First, the government cannot offer any reasonable basis for Defense Counsel's refusal of the trial court's invitation to poll the jury. Counsel, before you get there, you're about to argue the merits to us of something that is usually handled as a post-collateral attack on the conviction. Our law is really quite clear that we almost never take up those invitations on direct appeal. The government says this case provides no occasion to take it up on direct appeal. There's no evidence as to why counsel did what he did. There's no evidence except your contention that there was a reason to poll the jury. So before you go down the path of arguing the merits to us, you have this actually quite large procedural hurdle to overcome. Would you address that? Yes, Judge Lynch. There's two pieces to the adequacy of the record. The first is whether we can evaluate deficient performance piece. The second is whether we can evaluate the prejudice piece. On deficient performance, the absence of any indication of what trial counsel was thinking matters if there is a conceivable basis that counsel could have had. What we have here is a situation... I'm sorry. You want us to adopt a per se rule that any failure by an attorney in a criminal defense to poll a jury, whether offered by the judge or not, is per se both prejudicial and ineffective assistance. There is no law out there to support any such contention. And to be clear, Your Honor, we do not make that contention. Unless that is inherent in your argument. I don't think it is, Your Honor. The specific claim that we're making is not a per se rule. What we're saying is under two parameters there is ineffective assistance. Those two parameters are, number one, you have a guilty verdict on all counts. So there's nothing to be lost. The jury can't convict the defendant of anything more if it goes back to delivery. And isn't that true in every single criminal conviction? No. There will often be a not guilty verdict on one or more counts. Oh, I see. So you're saying we should adopt different per se rules depending on whether the jury convicts on all counts or not. Your Honor, I wouldn't characterize it as a per se rule for the reason I'll get into next. But on that, that's a significant difference. Because when there's a not guilty on one of the counts, now that's a tactical question. Does defense counsel think it's worth the risk of the jury going back and convicting on that count too? We concede that's a tactical question. You need defense counsel's thought process on that to figure out if he made that choice deliberately. By contrast, when the verdict is guilty across the board, that tactic goes out the window. There's no way the verdict can get worse by the jury being non-unanimous and going back and deliberating more. Okay, so let me go back. That is your argument. Is there anything else to your argument other than there was a conviction on all counts? Yes, Your Honor. And this goes to the question of why defense counsel declined the court's invitation to poll the jury. Yes. And I think the first half, as we just discussed, Your Honor, is whether there's anything that could be lost. That would certainly make a tactical issue that we acknowledge would not be preserved in the record. We don't have that here. The record's adequate to assess sufficient performance. The second half is were there any signs of non-unanimity? And that's the Garrardi case, right? In that context, because it's a blank record. So what are the signs of non-unanimity here? The unique facts here, Your Honor, are, number one, the impending snowstorm, which means the jury doesn't reach a verdict that day. They have to come back the next week. Two, the 4 p.m. non-movable meeting that we know the jury was aware of because the court mentions it on the record and the jury hears it multiple times. And three, after two hours of deliberating, the jury comes back with a question on one of the elements touching on that key issue of whether Bowie meant to defraud. The judge gives them no new information, and the jury then goes back and deliberates struggles for two more hours until right around that magic 4 p.m. moment, they come back with a verdict. It is in that vein that the trial judge looks to defense counsel and says, do you want to poll the jury? Any reasonable counsel in that situation would understand what was happening and would exercise that right to poll the jury because the defendant has nothing to lose by him doing so and a considerable amount to lose by waiving that poll and potentially being convicted by a non-unanimous jury that rushed under these pressure cooker circumstances to reach a verdict by that deadline. Let me ask you, what is the remedy that you're asking? Are you asking that we vacate the verdict or, you know, and this is based on my experience, a judge can always recall the jury and ask individually each of the jurors, was that your verdict? Was that your verdict? What are you asking us to do exactly? Your Honor, we are asking for a vacater and a remand for a new trial. And I would note that that's exactly what this court did in Miranda. There wasn't any attempt to recall the jury. There wasn't any attempt at recreating those facts years after. It was instead just a straight reverse and remand. We'd ask for the same relief here. I think it's significant. The government in this case has not asked for anything like what Your Honor is proposing as far as some sort of procedure to ex post facto recreate that circumstance. I think there's a number of reasons logistically why that might be difficult to do well, and I'm not going to advocate for anything more than what this court has done in the past. Okay, do you want to go back to your first issue? Why do you think the evidence is insufficient? And to be clear, oh, is Your Honor asking me to pivot to the issue one on sufficiency? I am, yes, please. Yes. On sufficiency, there's three key facts that inform the sufficiency analysis. First, Mr. Bowie tells Bank of America multiple times he does not have payroll for 2019, does not have tax forms for 2019. And in fact, the bank representative testifies as well that she understood from what Mr. Bowie told her that he didn't have 940 or 941 tax forms and that he didn't have any meaningful payroll. Number two. Did someone ask that person that he spoke with if she told him that he was ineligible without this information? No, Your Honor. And in fact, there's nothing in the record that indicates Mr. Bowie ever was told that, ever was told he couldn't use projections, or ever was told that he was filling out the 940 and 941 wrong. And I think any reasonable person would expect if they committed an error that fundamental, they would be notified of it by the bank. There's no evidence that ever happened. Your counsel, your client, got on the witness stand and said he learned all about this payroll protection program through a lecture he attended online or in person. And within two weeks, although he had no existing company and no existing payroll and no existing employees, he applied as though he did have a payroll and an ongoing company. So we are supposed to derive from his own testimony he did not understand the purpose of the program and he did not understand that the forms he were filling out were false? Your Honor, I think the most significant point there is for half the lenders that Mr. Bowie applies to, he submits multiple wildly contradictory applications. That makes sense if he understands and is trying to present them as projections. It doesn't make sense if he's trying to pass this off as a historical report. But if he's asking, if these are projections, he wired $20,000 to India with payroll and memo line and then took out several thousand dollars in cash. Doesn't that contradict what you're saying? I don't see how, Judge Helfie, the use of those funds after he receives them to start doing the things he says he wants to do is consistent. He said I want to use this money for payroll. He then does so. Counselor, I guess the problem, at least that I'm having, is that the jury heard all of this. The jury, more importantly from my perspective, heard your client and made a credibility assessment. And it's hard for me to understand why the inferences that it necessarily drew are not reasonable inferences or do not constitute sufficiency. And I think, Your Honor, on that point, really it comes back to that sufficiency analysis has to be conducted in light of those key overarching facts. One, the fact that he does tell the bank truthfully he doesn't have any of these forms. He never says, oh, whoops, now I've found it. I'm sorry, is there anything in his testimony where he posits an understanding of why he might potentially be eligible for these funds if, in fact, the seminar that he attended, however he attended it, specifically said it was for ongoing businesses? Well, to be clear, Your Honor, it is an ongoing business. The business existed in 2019. Judge Lynch, I meant to add this earlier to your question, but Susuda Tech exists in 2019 before he applies. There is over $20,000 in payroll before any of the PPP loan monies are transferred to Mr. Bowie. And there are already a large list of potential employees that Mr. Bowie is reaching out to has in his mind on the bench. Counsel, to be more specific, he had no employees. He says that he hoped to have employees if he got funding. So any notion that he had $20,000 available and was about to hire these employees is not what the record shows. I do think, Your Honor, and I think this addresses Judge Thompson's question as well, there seems to have been some confusion in Mr. Bowie's mind about exactly what the correct business lingo was for how these people were placed on projects or not. He didn't have any formal training in any kind of business administration. He was more so on the computer science side. And what he's presented the Bank of America with is his understanding. And I would note, too, he sends in that initial application with those large numbers of projected, in his mind, payroll, and he then, may I finish the sentence? Yeah, go ahead. After he sends that application in, he tells the bank candidly, does not have any meaningful payroll, does not have the tax forms. Okay, thank you. And you're going to have rebuttal soon. Thank you, Your Honor. Let's hear from the government. Good morning, Your Honors. May it please the Court. Javier Sinha on behalf of the United States. I'd like to quickly begin with the arguments in the order my friend on the other side raised them. And so on the ineffective assistance of counsel point, as Judge Lynch mentioned, this Court should not reach it. There's a procedural hurdle, which is that these are usually brought in Section 2255 collateral proceedings for extra record development that's necessary here. This Court has discretion to reach the merits. We don't think the Court should, and if it would like to, I think the prejudice prong is quite clear in our brief that there's been no prejudice in this case. If there are no questions on that, I'm happy to continue. How do you address counsel's argument that in split decision cases, the defendant definitely might have something to lose, but in a situation like this where it was guilty across the board, he had absolutely nothing to lose and everything to gain? We simply don't agree with that. But why? It seems to be a per se rule that's not in this Court's case law. Girardi seems to say the opposite, which is when a counsel has a reasonable belief that there's no reason to think the jury was non-unanimous, it's a reasonable decision not to pull the jury. And I'll point out here that Mr. Bowie has the burden of proving strict and prejudice, or excuse me, deficient performance. So to the extent the record isn't clear on why he would not do so, that simply indicates he has failed to carry his burden. You didn't answer the question. I'm sorry. You didn't answer the question. Go ahead, Judge Lynch. I had a corollary question. So the judge says, would you like me to pull the jury? What reason would somebody have not to pull the jury when it's guilt on all charges? So the reason might be just that the lawyer, again, we don't have the information here on the record to know why this lawyer didn't do so, but the reason might be just that the lawyer thinks there's no reason to think the jury here is non-unanimous. You know, the jury was instructed to be unanimous multiple times in this case especially. This Court presumes juries follow instructions. So unless there's a reason to think that a pull of the jury would have some sort of effect, that the jury may not have been unanimous for some reason, there's really no reason to ask. Well, counsel points to two stress factors on the jury, the impending snowstorm and whatever this 4 o'clock appointment one of the jurors had. And with those two factors in mind, once again, it goes back to, well, if everyone knew that those were stress factors on the jury, why wouldn't the attorney ask to pull the jury to make sure that those factors weren't influencing the decision? So it's unclear from this record, which is why we believe extra record of elements necessary in a collateral proceeding, exactly what those stress factors, you know, did to the jury, what did to the trial. You know, there is evidence of a snowstorm coming. It's unclear if that created what defense counsel calls pressure cooker circumstances. We think their record doesn't support that sort of characterization. There was a 4 p.m. jury. It's unclear what happened to that, excuse me, 4 p.m. meeting. It's unclear if that meeting took place or if it was postponed. It's simply not on the record as well. And the jury stayed past 4 to deliver its verdict, and so it's not clear that the jury was sort of rushing to get a verdict. Let me ask you if you know from the record, because usually when the judge gives the jury instructions, my practice, for example, I would always tell the jury, you take as long as you have to. If you need to recess, you recess. There's no set time limit. If you resolve, you know, your verdict, you reach a verdict in two hours, fine. If it takes three days, it takes a week. You take as long as you have to. Did the judge give any similar instruction below? He did, Your Honor. He said, you know, to the jury multiple times, you know, we'll close tomorrow for this snowstorm, but we're open Monday, open Tuesday. You're welcome to come and deliberate as long as you want. The court said you're the masters of your own schedule from this point forward. You shouldn't have to rush if you don't want to rush. And so the jury was told that there was no need to rush if it didn't want to. And so it certainly knew that it was a master of its own schedule. And at no point from the record did the judge, like, pressure him, you need to decide by 4 p.m. today and that's the end of your deliberations. That is not in the record, correct? That did not happen? No, Your Honor. The judge just made clear the jury was the master of its own schedule from that point forward. Okay. Thank you. You're welcome. If there's no further questions on this, Your Honor, I'm happy to move on. Let me just one additional question. Brother Counsel's position is if we find in his favor that automatically his client gets a new trial, I pose the question is if we were to find that it's an error or a possible error, could we have the judge do polling at this time? What's your position on that? I think this court could, Your Honor. I think it would be hard to get through the procedural hurdles and the merits of this case, but I think if the court wants to remand for the judge to poll the jury, that would be acceptable. Okay. Thank you. How long ago was this trial? This trial happened February 22nd to 24th, 2022. But, again, we don't think that's necessary here. There's the fact that this shouldn't have been brought in direct appeal, and, of course, the merits of the question, which we think Mr. Boyd hasn't carried his burden of showing. Turning quickly to the sufficiency arguments, Your Honor, Mr. Boyd's arguments in his brief and in this court this morning essentially asked this court to adopt his characterization of the facts over the jury's view of the evidence. That's simply not how this court undertakes sufficiency of the evidence review. The question is not how the government has proven every innocent interpretation of the evidence, but whether there's sufficient evidence here to prove Mr. Boyd's guilt beyond reasonable doubt. Defense counsel's main claim in this court this morning has been that Mr. Boyd told Bank of America that he didn't have these tax forms. He never filed them. The argument has a few problems. The first is that he didn't tell the other lenders that he didn't have these forms, and so this argument only really affects count five, which is the false statements to a bank account. And even then, before he even told the bank that he didn't have these forms, he had already submitted the fake payroll processing documents, which listed gross wages paid, health care premiums paid, and retirement benefits paid, and had dates from 2019 to 2020, suggesting that these had already been paid in the past. I'm sorry. Could you go through the chronology again because I think I'm misunderstanding it? So are you specifically saying that he submitted fraudulent documents before this Bank of America employee told him that he needed them? Correct, Your Honor. He submitted separate fraudulent documents before the Bank of America employee told him. To Bank of America or some other bank? The Bank of America, Your Honor. So he submitted his application, and along with that, he submitted these payroll processing documents, which he claimed were payroll processing records, and those said that from February 2020, Mr. Boyd paid a certain number of dollars in gross wages to employees and also paid a certain number of dollars for retirement benefits and employee health benefits, and he also claimed that from June 1st to December 1st. I'm sorry. So he's saying that these were figures actually paid and not projections? The dates suggest that these were figures he was saying he paid in the past, yes. And he submitted that prior to speaking with the bank agent? Correct, Your Honor. And so at that point, he had already submitted these misstatements to the bank, and so his argument that, well, these are projections he included in the tax forms, doesn't really make sense because he already included these false statements in a separate set of documents. On top of that, even if he had told the banks, all of them, that I don't have these tax forms, this court has said that the fact that a fraud is unlikely to work because the person trying to be defrauded is aware of the fraud, that doesn't negate intent to defraud. Mr. Boyd could still have the intent to defraud even if he had already told the bank that, you know, I don't have these forms and the fraud was unlikely to work. His claim that he didn't is simply just him asking this court to adopt, credit his interpretation of the testimony and the evidence rather than the jury's, Your Honor. And the last thing I'll quickly say is that the applications specifically say that this money is to be used to maintain payroll and employees, not to hire new employees. So I think Your Honor asked, was he ever told this money couldn't be used to hire employees in the future? And the applications specifically state that, that this is money for maintaining payroll and employees. Your Honors, if there's no further questions. Any questions for Judge Lynch? I was just curious as to why when the witness was on the witness stand, the government didn't ask that specific question. The bank witness or? The bank witness. I'm sorry, what question? That you are not eligible. I mean, the testimony was that you need X, Y, and Z, but there was nothing from what I saw, unless I'm misunderstanding the record, where the bank employee said if you don't have these, you are not eligible. So as far as the record is concerned, there's no testimony that the bank employee said, if you don't have employees, you're not eligible. The application says that. It says, you know, you have to have had employees as of February 15, 2020, when you're applying. And so that information was given to him in the applications themselves. And so there's evidence that he knew that he wasn't eligible, along with, as Your Honors mentioned, he went to that seminar that said this is money to be used to maintain employees and payroll. Your Honors, if there's no further questions. Okay. Thank you very much. Thank you. Okay, let's rebuttal. Please reintroduce yourself on the record to begin. You have a two-minute rebuttal. Thank you. Scott Groshen on behalf of Defendant Appellant Elijah Bowie. Your Honors, the standard for prejudice on an ineffective assistance, I'm sorry, on a failure to jury poll issue under plain error is whether there is some showing of circumstances indicating a possibility of lack of unanimity or assent. The idea that in the criminal context, a higher showing of prejudice would be required is inconsistent with this court's case law. You've just heard the government argue that the facts that you say are clear and undisputed about the so-called stress factors are, in fact, not established in the record. That, in fact, he referred to a snowstorm coming in the next day, not that day. He said there's no evidence as to whether that 4 p.m. meeting was, in fact, still on. And I'm struck by the fact that the judge thought that this jury had plenty of time to keep deliberating that day and is a very experienced judge. If he had thought there were stress factors, I think he might well have told the jury to come back after the snowstorm. So, again, you're arguing for per se rules when that is just inconsistent with our law about taking up these issues on direct appeal. And, Your Honor, to be clear, the trial judge says he is concerned about this. He does see the potential for pressure. He's going to see how it goes. There's also an instruction, as I asked Brother Counsel. The judge said, basically, the jury, you're the masters of your schedule, so there's no rush or no pending time frame. You need to decide by 4 p.m. today or by tomorrow. The judge gave that general instruction that you take as long as you have to. So doesn't that do away with your argument? I don't think so, Your Honor, because jury polls always exist where there's already instructions by the judge saying you have to be unanimous. So the importance of a jury poll is looking past those jury instructions. The same should be true here. Okay. If you have 30 more seconds, you want to conclude anything, please go ahead. Thank you, Your Honor. I do want to briefly address on the sufficiency point. Brother Counsel says the fact that Mr. Bowie submits these numbers before he says he doesn't have payroll, doesn't have tax forms, shows that clearly it wasn't meant as a projection. I see that the opposite way. The fact that he submits these numbers, then says I don't have that much payroll, and then submits them again on the 940-941, confirms that that was his, suggests strongly that that was his intent. Counsel, do you dispute the government's assertion that the form itself told him he had to have employees already on payroll? Your Honor, the form certainly says that, and Mr. Bowie testified, and, of course, the jury could assess this, but his understanding was… And it did. Correct, and it did. His understanding, he testified, was that he was doing what the bank asked him to. And I think for the jury to reach the opposite conclusion, there has to be some hook in the record it could depend on due to those overarching factors of him truthfully telling the bank before and after, of him submitting multiple contradictory applications. In one case, within eight days of each other to the same lender. Does the Bank of America know that these are contradictory applications to other lenders? No, no, no, to Bank of America, and then a second time to Bank of America again with contradictory 940s dated identically. That's not consistent with the idea that he's trying to pass this off as a historical report. But what would explain why he submitted fraudulent information in the first place? I know you said that his post-submission statements should be read as something, but why would he do it in the first place? In the first place, Your Honor, because he has that same understanding. He's looking at it as a projection of, here's my application of how I'm going to spend the money. And he then tells the bank after he says, here's how I'm going to spend the money. Is there something in the application itself which one could reasonably think suggests that that's appropriate? Your Honor, I think the conversation that Mr. Bowie has with the Bank of America representative shows that he didn't have a full understanding of the PPP loan application process. He attended the seminar. He had some jots in his notebook. He's not a businessman in that particular way, and he doesn't have any formal training on the PPP program. So the question the jury is tasked with is, I think I was going to... Either that or he's spinning a tale to Bank of America. Again, Your Honor, I keep coming back to it's difficult for me to reconcile that with the fact he gives Bank of America. And if Your Honor's trying to, I believe it's J.A. 9.2. In the appendix, the government's chart shows exactly what Mr. Bowie submitted. And he submits to Bank of America a claimed monthly payroll of $3 million with 353 employees. And then about a month later, $800,000, $95,000, same time period. For Lendio, 18 employees, 8 days later, 95 employees. Drastically different payroll. That's simply not consistent with the idea that he's trying to pass this off as a historical report. It is highly consistent with the idea that these are projections. And he's revised what he thinks makes sense given the ongoing data about the pandemic. Okay. My colleagues, any other questions? No. Okay. Your issue. Thank you very much, both counsel. Thank you, Your Honor. And let's call the next case. Yes, Judge. Thank you, counsel.